

**VIA ECF**
Hon. Kenneth M. Karas
United State District Court,
Southern District of New York
300 Quarropas St,
White Plains, NY 10601

September 29, 2021

Your Honor,

      This firm represents Plaintiff Jose Flores in the above-referenced matter. Plaintiff writes jointly with Pro Se Litigant Armando Merino to request Court approval of the settlement pursuant to *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015).

      Consistent with the Court's order, the purpose of this letter is two-fold. First, the letter will provide support for the fair and reasonable settlement sum $25,000. Second, the letter will provide the Court with the requested information regarding the attorneys' fees so that the Court can determine whether the requested fee award of $8,333.33 is appropriate.

The Parties have agreed to a Settlement Agreement and General Release for plaintiff ("the Agreement"), attached hereto as Exhibit A which resolve all of Plaintiff's wage and hour claims against Defendants. The Parties believe that the interests of all concerned are best served by compromise, settlement and dismissal of Plaintiffs' claims with prejudice, in exchange for the consideration as set forth in the Agreement.

The Agreement is the result of arms-length bargaining between the Parties and a seven (7) hour mediation with mediator Rebecca Price. The Parties represent to the Court that while Plaintiff believes that the settlement amount is less than what he would be entitled to (the damages calculation total without liquidated damages are close to $44,686.00 plus liquidated damages and attorneys fees if he prevailed at trial, and Defendant Merino believes the settlement amount is more than what Plaintiff would recover if he prevailed at trial, the settlement is fair and reasonable, as discussed herein.
      For these reasons and based on the reasons set forth below, the Parties jointly and respectfully request that that Court enter an Order approving the settlement as fair and reasonable.

                                                    Lina Stillman, Esq.

I. **Statement of the Case**

Plaintiff was formerly employed by Defendants, who operate a Supermarket/Restaurant to make tacos, clean and generally tend to the small supermarket. Defendant Merino believes that he paid Plaintiff appropriately but did not have any records of doing so.

The Parties acknowledge there are risks to both sides in proceeding with litigation, as well as significant burdens and expenses in establishing their respective positions through a trial. For example, Mr. Merino named witnesses who would testify that Plaintiff did not work as many hours. Plaintiff also has witnesses who would testify at trial that he in fact worked as many hours.

II. **The Proposed Settlement is Fair and Reasonable**

Under the settlement, Defendants will pay Plaintiff a total sum of $25,000 to settle all his claims. Under *Lynn's Food*, a court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved."). The Parties engaged in extensive telephonic and electronic settlement negotiations over the course of several weeks, and then agreed to enlist a mediator. The Parties mediated diligently for close to (7) seven hours with the help of mediator from the Southern District of New York.

Plaintiffs believe that this settlement is a fair and adequate result, and it should be approved as a fair settlement. *See Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement."). Plaintiff himself ultimately chose the certainty of an agreed-upon settlement, which also allowed them to avoid the uncertainties of trial.

III. **Chart Calculations**

This chart was created at the mediation, and it was made for settlement purposes only and shared with Defendant Merino and the mediator. In the damages chart, the Plaintiff's wage and hour damages (including minimum wage damages, overtime wage damages are calculated in segments of time, broken into "Pay Periods." Each pay period calculates the number of weeks in each period ("No of Weeks in Pay Period"), and then based upon each of the Plaintiffs recollection or declaration, in this instance, (48) forty-eight hours, lists the number of hours worked per week in each period ("Hours Per Week in Period"). At the mediation, both

parties discussed actual hours worked after breaks and agreed that (48) forty-eight hours was more or less the time worked weekly.

The next line in the chart automatically calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to Plaintiff (the "Credited" Weekly Pay) for each period, then dividing that amount by the number of hours worked per week during the period. The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculation later in the chart. The "Credited Weekly Pay" is the amount of money actually paid and is based upon Plaintiff's affidavit. The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period. In Plaintiff Flores' case, he was paid $500 no matter how many hours he worked, so the underpayment per week for the (48) forty-eight hours worked. The "Underpayment per week" is acquired when we subtract "lawful weekly pay" and "Credited Pay"

      a.    *Calculations within the Chart* – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiff should have been paid per week during each pay period. The actual formula used in this column is as follows: ((greater of minimum wage or calculated base pay) * Hours Per Week up to 40)+ ((greater time and a half rate) * (Hours Per Week over forty, if any))The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it, if it does not, it uses it for the subsequent calculations (as the Plaintiff is entitled to earn at least the minimum wage). The chart then automatically calculates what the hours should have been compensated at under the base rate of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40. The Chart then subtracts the amount actually paid to Plaintiff (the "Credited Weekly Pay") and then derives the "Underpayment per Week." This number then when multiplied by the number of weeks in each period derives the total damages due for unpaid minimum wages and overtime for each period ("Unpaid Wages & OT).

Under New York law, since 2011, when a restaurant employee is paid a weekly salary rather than an hourly wage, the regular rate of his pay is determined by dividing the weekly salary by 40 hours. 12 N.Y.C.R.R. §146-3.5. Likewise, under the FLSA there is a rebuttable presumption that a fixed weekly salary is intended to cover 40 hours of work per week, and therefore the regular rate is calculated by dividing the weekly salary by 40 hours. Where an employee receives a straight weekly salary, there is a rebuttable presumption that the salary covers 40 hours worked. *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372, 385 (E.D.N.Y. 2012); *Guallpa v. NY Pro Signs Inc.*, Index No. 11-cv-3133(LGS), 2014 U.S. Dist. LEXIS 77033, *9-*10 (S.D.N.Y. May 27, 2014); *Moon v. Kwon*, 248 F.Supp.2d 201, 207-08 (S.D.N.Y. 2002); *Giles v. City of New York*, 41 F.Supp.2d 308, 317 (S.D.N.Y. 1999); " Unless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate, courts do not deem weekly salaries to include the overtime premium for workers regularly logging overtime, but instead hold that weekly salary covers only the first 40 hours." *Giles*, 41 F.Supp.2d at 317. Therefore, to determine the employee's regular rate, the weekly salary is divided by 40 hours. *Guallpa*, 2014 U.S. Dist. LEXIS 77033, at *12*13 (where employee was paid a set weekly salary and worked 66 hours per week, "the Court should calculate [plaintiff]'s rate as though his weekly wage was intended to cover a forty-hour work week"). Here, Plaintiff Flores presumably worked an average of 48 hours per week and was told

he would be working a "full time schedule of 40 hours per week" and was paid straight salary of $500 per week for the entire time he worked for Mr. Merino, the Defendant.
Therefore, his regular rate is determined by dividing his weekly pay by 40 hours.

### III. Plaintiffs' Attorney's Fees are Fair and Reasonable

Under the settlement, Plaintiffs' counsel will receive $8,333.33 from the total settlement amount as attorney's fees. This represents a third (33.33%) of the settlement amount and constitutes the number reflected in the Plaintiff retainer agreement, which includes costs.

The amount provided to Plaintiffs' counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. *See Castaneda v. My Belly's Playlist LLC,* No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the Plaintiff's attorneys a contingency fee of one-third to account for risks in litigation); *see also Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff requested award is reasonable. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

Given Plaintiffs' counsel's significant experience representing plaintiffs in New York in wage and hour litigation, Plaintiffs' counsel obtained an excellent result with relatively low time and expense (and without Counsel on defense side). A brief biography of the attorney who performed billed work in this matter is as follows:

   a. Lina F. Stillman and has been practicing law since 2012. From 2012-2015, she was an associate at two law firms where she practiced exclusively in the areas of Labor and Employment with emphasis on wage and hour litigation.
   She opened her law firm in response to the immigrant community's need for Spanish and Portuguese speaking attorneys to care for their interests exclusively. Miss Stillman speaks fluent Spanish, Italian and Portuguese.
   She is an active member of the LGBT Rights Committee of the New York City Bar Association and the New York Chapter of the National Employment Lawyers Association.

### Conclusion

Plaintiffs was represented by counsel throughout this lawsuit, and Plaintiffs' counsel has agreed to the settlement amount based on the approval of her client. Plaintiffs' interests have thus been adequately safeguarded. In full consideration of all the issues, we believe that the Parties' agreement is fair and reasonable, and that the settlement should be approved.

Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to address them. The Parties thank the Court for its attention to this matter.

Respectfully submitted,
/s/Lina Stillman